UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

:
TIMOTHY ROBINSON,                      :
                                       :
          Petitioner,                  :    Civ. No. 13-5913 (NLH)
                                       :
     v.                                :    OPINION
                                       :
J.T. SHARTLE,                          :
                                       :
          Respondent.                  :

---

APPEARANCES:

Timothy Robinson, #40697-083
FCI Fairton
P.O. Box 420
Fairton, NJ 08320
     Petitioner pro se

Elizabeth Ann Pascal
Office of the U.S. Attorney
401 Market St.
P.O. Box 2098
Camden, NJ 08101
     Counsel for Respondent

HILLMAN, District Judge

     Petitioner Timothy Robinson, a prisoner currently confined

at the Federal Correctional Institution in Fairton, New Jersey,

has submitted a Petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241, claiming that the United States Parole

Commission (the "Commission") improperly refused to credit him

for time spent in federal custody.  Petitioner names as party

respondent, Warden J. T. Shartle, as the person having custody

over him pursuant to 28 U.S.C. §§ 2242 and 2243.  For the foregoing reasons, the Petition will be denied.

I.   BACKGROUND

A. Parole Procedure for D.C. Offenders

Because Petitioner is challenging re-parole decisions made by the Commission regarding a sentence imposed by a District of Columbia Superior Court, it is appropriate for this Court to begin with a discussion of the Commission's authority and parole procedures.

As a result of the National Capital Revitalization and Self-Government Improvement Act of 1997, jurisdiction over parole decisions for District of Columbia offenders was transferred from the District of Columbia Parole Board to the Commission. See The National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998), codified at D.C. Code § 24-131(a)(1) (2001).  In making parole release decisions, the Commission interprets and implements the District of Columbia Official Code and has authority to amend and supplement the parole laws of the District of Columbia. See D.C. Code § 24-131(a)(1).

A parolee who is convicted of a new offense while on parole may be charged with a parole violation by the Commission. See 28 C.F.R. § 2.44.  A revocation hearing ensues and, if the

Commission decides to revoke parole, as a corollary, it must make several other related determinations. See 28 C.F.R. § 2.52. Among other things, the Commission must make a re-parole determination. Id.  In other words, the Commission must determine the length of time which a violator must serve as a result of his parole violation before he is again paroled.

The Commission uses the re-parole consideration regulations set forth in 28 C.F.R. § 2.21 to create guidelines and establish consistency in the exercise of discretion. See 28 C.F.R. §§ 2.20, 2.21.  Section 2.21(c) states that "[t]ime served on a new state or federal sentence shall be counted as time in custody for re-parole guideline purposes." 28 C.F.R. § 2.21(c).

It is important to note that re-parole is distinctly different from the length of time which remains to be served on the original sentence as a result of the parole violation. See Id.; 28 C.F.R. §§ 2.21(c), 2.52(c); see also, Bowen v. U.S. Parole Comm'n, 805 F.2d 885, 888 (9th Cir. 1986) (explaining the difference between sentence credit and re-parole guidelines credit); Berg v. U.S. Parole Comm'n, 735 F.2d 378 (9th Cir. 1984); Staege v. U.S. Parole Comm'n, 671 F.2d 266 (8th Cir. 1982).  Thus, in addition to re-parole, the Commission must also determine the effect that revocation of parole will have on the time remaining to be served on the parolee's original sentence (the "violator term").

In making this determination, section 2.21(c) is again instructive and it directs that credit for time in custody for re-parole guidelines purposes "does not affect the computation of the expiration date of the violator term as provided by §§ 2.47(e) and 2.52 (c) and (d)." Id.  Section 2.52 then states, in relevant part, that

> [i]t is the Commission's interpretation of 18 U.S.C. 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence.

28 C.F.R. § 2.52(c).  Thus, Section 2.52(c) clearly delineates the time period that is forfeited upon conviction of a new offense while on parole; and the plain language of this section provides no indication that the amount of time forfeited is affected by a parolee's custody status during this time.

B. Petitioner's Factual and Procedural History

The factual background of this case is not in dispute. However, due to multiple offenses, convictions, and parole violations, the procedural history of this case is lengthy and somewhat convoluted.  Below, the Court sets forth the facts and procedural history necessary for the Court's disposition.

In 1993, the District of Columbia Department of Corrections aggregated Petitioner's District of Columbia Superior Court

sentences in Case Nos. F-6745-91 & F-14327-91 (collectively, the "D.C. Offenses") into a sentence of 19 years, 6 months, less 520 days jail credit, for a minimum term of 6 years, 6 months.

On November 5, 1997, the District of Columbia Board of Parole paroled Petitioner from this sentence and ordered that Petitioner's parole for the D.C. Offenses would expire on October 11, 2011. (Decl. of Gervasoni 4, Cert. of Parole, Ex. 2, ECF No. 7-1).  However, while he was incarcerated on his D.C. Offenses, Petitioner was convicted by the United States District Court for the Eastern District of Virginia for Possession of Marijuana with Intent to Distribute and Prisoner in Possession of Marijuana (the "Marijuana Offense").  He was sentenced to 60-months imprisonment, with 3 years' supervised release. Therefore, on November 5, 1997, Petitioner was paroled to a federal detainer lodged by the United States Marshals Service for the Marijuana Offense and he immediately began service of that sentence upon his release on parole for the D.C. Offenses.

On April 8, 2002, Petitioner transitioned to home confinement for the Marijuana Offense.  Shortly thereafter, however, on April 13, 2002, Petitioner was arrested by District of Columbia Police and charged with Attempted Possession with Intent to Distribute Cocaine, Case No. F-2369-02 (the "Cocaine Offense").

Despite his arrest, Petitioner was released from federal custody to supervised release on the Marijuana Offense on April 30, 2002.  Because he failed to report to his supervision officer as required by the terms of his parole for the D.C. Offenses, on May 1, 2003 the Commission issued a warrant charging Petitioner with a violation of parole for the D.C. Offenses.

Additionally, as a result of the April 13, 2002 arrest, Petitioner was charged with a violation of his supervised release on the Marijuana Offense and his supervised release was revoked.  On December 13, 2002, he was sentenced to 8 months' imprisonment.

After his release from federal custody on the violation of supervised release for the Marijuana Offense, Petitioner was arrested on July 9, 2003 on the Commission's warrant for violation of parole for his D.C. Offenses.  He received a probable cause hearing on July 15, 2003, during which the Commission declined to revoke parole, and instead reinstated Petitioner to parole and ordered him to report for supervision.

On September 4, 2003, the Commission issued a new parole violation warrant charging Petitioner with violations of parole based on the April 13, 2002 arrest and Petitioner's alleged use of illegal drugs.  On September 16, 2003, Petitioner was arrested on this warrant and, following a probable cause hearing

on September 23, 2003, the Commission again declined to revoke his parole.  On December 11, 2003, Petitioner was again reinstated to parole supervision for the D.C. Offenses.

On February 27, 2004, the District of Columbia Superior Court sentenced Petitioner on the Cocaine Offense to one-year imprisonment with 5 years of supervised release to follow.  On April 15, 2004, the Commission issued a warrant charging Petitioner with a violation of parole for the D.C. Offenses based on his conviction and sentencing on the Cocaine Offense.

Petitioner came into custody on that warrant on December 28, 2004 and a revocation hearing ensued on May 9, 2005.  As a result of this hearing, the Commission revoked Petitioner's parole and ordered that he receive no credit towards his D.C. Offense sentence for time spent on parole.  Thus, Petitioner forfeited all time from the date of his release on parole, November 5, 1997, to the date the parole violator warrant was executed, December 28, 2004.  Petitioner was ordered to serve 36 months in custody for his parole violation with a presumptive re-parole date of November 2, 2006.

Following his re-parole on November 2, 2006, the Commission issued another parole violation warrant on March 31, 2008, charging Petitioner with violating the conditions of parole for his D.C. Offenses by using illegal drugs on multiple occasions and for a new law violation relating to an arrest that occurred

on September 8, 2007.  Petitioner was taken into custody on June 2, 2008 and received a probable cause hearing on June 6, 2008. Petitioner accepted an Expedited Revocation Proposal and, based upon the use of drugs charge, the Commission again revoked Petitioner's parole on July 23, 2008.  The Commission also ordered that Petitioner forfeit all credit for time spent on parole, and ordered that Petitioner continue to a presumptive re-parole date of July 31, 2009 after 14 months of service. When Petitioner was released on July 31, 2009, he was released to a detainer lodged by the Prince George's County Sheriff's Office.[1]

In December 2011, Petitioner was arrested for Attempted Distribution of a Controlled Substance (Heroin), Case No. 2011-CF2-023990 (the "Heroin Offense").  In addition to other events, this arrest led the Commission to charge Petitioner with a parole violation for which a violator warrant was executed on February 1, 2012.  While in custody on the parole violator warrant, Petitioner was found guilty of the Heroin Offense in the District of Columbia Superior Court and, on June 4, 2012, he was sentenced to 24 months' imprisonment.

---

[1] It is unclear what this detainer was for and how much time, if any, Petitioner spent in the custody of Prince George County authorities following his parole release on July 31, 2009. Nevertheless, this information is immaterial to the challenges raised in the Petition before the Court.

Thereafter, as the result of a hearing conducted on November 29, 2012, Petitioner's parole for his D.C. Offenses was revoked on January 11, 2013 based on his conviction for the Heroin Offense.  Again the Commission ordered that Petitioner receive no credit for time spent on parole and required that he serve 40 months to a presumptive re-parole date of February 1, 2015.  The Commission also noted that Petitioner would be paroled to his consecutive sentence for the Heroin Offense.

While serving time on the violation of parole for his D.C. Offenses based on his conviction for the Heroin Offense, Petitioner filed the instant Petition.[2]

C. Summary of Procedural History

Each time Petitioner's parole for the D.C. Offenses was revoked, his original sentence was not credited with any time from the date of his release, November 5, 1997, to the date the parole violator warrant was executed.[3]  Also, each time

---

[2] Although, given the presumptive February 1, 2015 re-parole date, Petitioner is no longer incarcerated on the D.C. Offenses, he nevertheless remains "in custody" for purposes of habeas review due to his continued parole supervision.  See Jones v. Cunningham, 371 U.S. 236, 238, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (those on parole are "in custody" for the purposes of federal habeas relief); Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003) (per curiam) (citations omitted) (defining "custody" as the imposition of "'significant restraints on liberty ... not shared by the public generally,' along with 'some type of continuing government supervision.'").

[3]  The only exception is that Petitioner was credited time spent in custody on previous parole violator warrants.

Petitioner's parole was revoked, he was re-paroled and the expiration date of his sentence for the D.C. Offenses was recalculated.  Finally, upon his last parole revocation on January 11, 2013, the Commission determined that upon completion of his sentence for parole violation, Petitioner would be paroled to his consecutive sentence for the Heroin Offense.

D. The Petition

Petitioner challenges the Commission's re-parole decisions. Petitioner did not file an administrative appeal.  Rather, he filed the instant habeas petition and argues that the Commission misapplied the applicable statutes and regulations when considering his violations of parole from the sentence for his D.C. Offenses.

Specifically, Petitioner raises the following challenges: (1) Petitioner asserts that the time he spent in federal custody should be credited against his parole time for purposes of computing his re-parole following his parole revocation in 2005; (2) Petitioner asserts that the time he spent in federal custody should be credited against his parole time for purposes of computing his re-parole following his parole revocation in 2013; (3) Petitioner challenges the Commission's decision to charge him with violations; (4) Petitioner asserts that his sentence for the D.C. Offenses has expired; (5) Petitioner asserts that the Commission misapplied D.C. Code § 24-406; and (6) Petitioner

contends that the sentence for his Heroin Offense conviction

should run concurrent to his sentence for violation of parole

for his D.C. Offenses.[4]

Petitioner has also filed a Motion to Expedite (ECF No.

12).

## II.   STANDARD OF REVIEW

United States Code Title 28, Section 2243, provides in

relevant part as follows:

> A court, justice or judge entertaining an application
> for a writ of habeas corpus shall forthwith award the
> writ or issue an order directing the respondent to
> show cause why the writ should not be granted, unless
> it appears from the application that the applicant or
> person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than

more formal pleadings drafted by lawyers. Estelle v. Gamble, 429

U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).

A pro se habeas petition must be construed liberally. See

Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

Nevertheless, a federal district court can dismiss a habeas

---

[4] Petitioner also states that his sentence in Case No. F-14327-91
is "illegal[,]" was computed incorrectly and, as a result, his
"overall sentence is completely miscalculated." (Pet. 6, ECF No.
1).   However, Petitioner does not further elaborate on these
allegations and instead focuses his arguments on the impropriety
of the Commission's re-parole decision.   Accordingly, Petitioner
has failed to state a federal claim as required by Habeas Rule
2(c) of the Rules Governing § 2254 Cases and these isolated and
unsupported allegations are summarily dismissed.   See 28 U.S.C.
§§ 2254 Rule 2(c), 4 (amended Dec. 1, 2004), made applicable to
§ 2241 petitions through Rule 1(b) of the Habeas Rules.

corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Denny v. Schult, 708 F.3d 140, 148 n. 3 (3d Cir. 2013); See also 28 U.S.C. §§ 2243, 2255.

### III. DISCUSSION

Petitioner requests a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asserts that, in making its re-parole decision, the Commission misapplied the relevant statutes and regulations.

Respondent has filed a Response and asserts that Petitioner failed to exhaust his administrative remedies. Regardless, Respondent contends that the Petition fails on the merits because the Commission properly forfeited all the time Petitioner spent on parole and correctly ordered that his parole violator sentence run consecutively to his sentence for the Heroin Offense.

### A. The Proper Habeas Statute

In the Third Circuit it is unclear under which habeas statute a District of Columbia prisoner must bring a habeas petition challenging the execution of his sentence. One line of cases, relying on the decisions in Madley v. United States Parole Comm'n, 278 F.3d 1306, 1309 (D.C.Cir. 2002) and Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001), explicitly holds that District of Columbia prisoners are state prisoners for purposes

of federal habeas corpus statute and, as a result, must rely on 28 U.S.C. § 2254 to bring claims challenging the execution of their sentences. See e.g., Robinson v. Reilly, 340 F. App'x 772, 773 (3d Cir. 2009) ("[A]lthough styled as a § 2241 petition, his petition should have been treated as one filed pursuant to 28 U.S.C. § 2254[.]"); Morgan v. LaManna, 150 F. App'x 145 (3d Cir. 2005) (finding that a petitioner's conviction and sentence in the District of Columbia make him a state prisoner whose only recourse for federal habeas relief is § 2254).

A second line of cases holds that § 2241 is an appropriate mechanism for District of Columbia prisoners challenging the execution of state sentences by federal parole authorities. See e.g., Warren v. Bledsoe, 349 F. App'x 687, 689 (3d Cir. 2009) ("[W]e believe that [the petition] should be construed as a § 2241 petition challenging the execution of his sentence."); Boling v. Smith, 277 F. App'x 174, 176 (3d Cir. 2008) ("The District Court had jurisdiction [over District of Columbia prisoner's habeas petition] pursuant to § 2241(a) because Boling is currently confined in the United States Penitentiary in Lewisburg, Pennsylvania."); Watkins v. Holt, 177 F. App'x 251 (3d Cir. 2006) (affirming district court's denial of District of Columbia prisoner's petition under § 2241); Wilson v. Reilly, 163 F. App'x 122 (3d Cir. 2006) (same); see also Haley v. Holt, No. 12-775, 2015 WL 300505 (M.D.Pa. Jan. 22, 2015) (addressing

the question of whether the petition was properly filed under §
2241 or § 2254); Redrick v. Williamson, No. 04-2393, 2005 WL
1155041 at *2 n.4 (M.D.Pa. May 4, 2005) ("Other courts
addressing this precise issue have concluded that a habeas
petition under § 2241 is the proper mechanism for redress.")
(citations omitted).

In other cases, the Third Circuit has treated federal
habeas petitions filed by District of Columbia prisoners as a
sort of hybrid; acknowledging — and tacitly approving — the
district court's treatment of a petition as one filed under §
2241 but simultaneously requiring a certificate of appealability
because a District of Columbia prisoner is considered a state
prisoner — effectively treating the petition as if it had been
filed under § 2254. See Deen-Mitchell v. Bledsoe, 548 F. App'x
747 (3d Cir. 2013); Wilson v. U.S. Parole Comm'n, 652 F.3d 348
(3d Cir. 2011).

As set forth above, there is Third Circuit case law that
supports the filing of a petition under either statute.   In this
case, Petitioner filed his habeas petition pursuant to § 2241
and Respondent does not dispute the appropriateness of the
statute under which the Petition was filed.   Therefore, the
Court will construe this Petition as one filed pursuant to §
2241.

B. The Proper Venue

The proper venue for a § 2241 proceeding is the prisoner's district of confinement. See Meyers v. Martinez, 402 F. App'x 735, 735 (3d Cir. 2010) (per curiam) (citing Rumsfeld v. Padilla, 542 U.S. 426, 443, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004)); see also Toney v. Fishman, No. 12-2108, 2014 WL 1232321 (D.N.J. Mar. 25, 2014) (collecting cases).  Therefore, to the extent this Petition is properly filed under 28 U.S.C. § 2241, venue is proper in this Court.

Because Petitioner in this case is in federal custody in this district, this is the proper Court in which to challenge the execution of his sentence by the Commission. Owens v. Gaines, 219 F. Supp. 2d 94, 98 (D.C. Cir. 2002) ("The principle of comity does not apply to this case because Mr. Owens is not in the custody of a state correctional facility, but the U.S. Parole Commission. The proper court in which to challenge the supervision of the U.S. Parole Commission is this Court."). Therefore, venue is also proper in this Court to the extent this Petition is properly filed under 28 U.S.C. § 2254. Id.

C. Exhaustion

Although they are considered state prisoners for certain purposes, District of Columbia prisoners who are challenging parole which arose out of a conviction from the D.C. Superior Court are not required to first bring the challenge in the D.C.

Superior Court prior to bringing a federal habeas petition. <u>See</u>
<u>Owens</u>, 219 F. Supp. 2d 94.

However, federal prisoners must ordinarily exhaust all
available administrative remedies before seeking relief under 28
U.S.C. § 2241. <u>Moscato v. Federal Bureau of Prisoners</u>, 98 F.3d
757, 706 (3d Cir. 1996); <u>Waddell v. Alldredge</u>, 480 F.2d 1078,
1079 (3d Cir. 1973).  This exhaustion requirement applies to
District of Columbia prisoners because they are in the custody
of the Commission. <u>See e.g.,</u> <u>Boling</u>, 277 F. App'x at 176;
<u>Watkins</u>, 177 F. App'x at 253 (finding that District of Columbia
prisoner confined in federal facility had failed to exhaust
administrative remedies as required by § 2241); <u>Redrick</u>, No. 04-
2393, 2005 WL 1155041.

The Third Circuit has identified three reasons for
requiring administrative exhaustion before filing petitions
under section 2241: "(1) judicial review may be facilitated by
allowing the appropriate agency to develop a factual record and
apply its expertise, (2) judicial time may be conserved because
the agency might grant the relief sought, and (3) administrative
autonomy requires that an agency be given an opportunity to
correct its own errors." <u>Arias v. U.S. Parole Comm'n</u>, 648 F.2d
196, 199 (3d Cir. 1981).  Exhaustion is not required, however,
where a court, in its discretion, determines that delaying
judicial review does not promote these underlying goals. <u>See,</u>

e.g., Rose v. Lundy, 455 U.S. 509, 516 n. 7, 102 S.Ct. 1198, 71 L.Ed.2d 379 (stating that exhaustion of state remedies is not required where futile); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (noting that exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (explaining that exhaustion is not required where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury").  If exhaustion is required, and petitioner has failed to comply, procedural default may be avoided only if the petitioner demonstrates cause and prejudice. Moscato, 98 F.3d at 761.

In this case, Petitioner does not dispute the fact that he has not sought, let alone exhausted, the administrative remedies available to him.  Additionally, he does not attempt to establish the "cause" and "prejudice" required to excuse his failure to exhaust. Id. at 761-62; see also Gambino, 134 F.3d at 171; Lyons, 840 F.2d at 205.  Instead, Petitioner asserts that exhaustion is not required in this case because the issue presented is one solely of statutory construction and he relies

on <u>Bradshaw v. Carlson</u>, 682 F.2d 1050 (3d Cir. 1981) in support of this position.[5]

In <u>Bradshaw</u>, the court indicated that exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, "because there is no need for [an] administrative agency to develop a factual record or to apply its expertise" with respect to the circumstances presented. <u>See</u> <u>Bradshaw</u>, 682 F.2d at 1052 (<u>citing U.S. ex rel. Marrero v. Warden, Lewisburg Penitentiary</u>, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).  In this case, Petitioner explains that the issues he raises in his Petition concern the Commission's application of statutes and regulations to his case. (Pet'r's Reply 2, ECF No. 11).  Therefore, this is not the situation contemplated in <u>Bradshaw</u> which warrants excuse from the failure to exhaust requirement.  Rather, the facts of this case present the inverse

---

[5] Petitioner also cites dicta in <u>Ryan v. Bensten</u>, 12 F.3d 245 (D.C. Cir. 1993) in support of his contention that he does not need to exhaust administrative remedies.  The Court notes that decisions of the Court of Appeals for the District of Columbia are not binding on this Court.  Furthermore, the dicta in <u>Ryan</u> is most relevant in the limited context of social security litigation — the area of law addressed in that case. Additionally, <u>Ryan</u> is factually distinguishable from the case at bar in that the only issue in <u>Ryan</u> was a constitutional challenge to a statute itself; whereas Petitioner in this case presents a challenge to the application of a statute.  Finally, it is worth noting that the circuit court in <u>Ryan</u> ultimately affirmed the district court's dismissal of the complaint for failure to exhaust administrative remedies.

of those in <u>Bradshaw</u>.  Here, the administrative agency — the Commission — "appl[ied] its expertise" with respect to Petitioner's specific circumstances. <u>Bradshaw</u>, 682 F.2d at 1052.

Because Petitioner is not challenging the validity of the statutes and regulations, themselves, but instead is challenging the Commission's <u>application</u> of those policies to his case, exhaustion is required before he may bring a § 2241 petition before the Court. <u>See e.g.</u>, <u>Romero v. Meeks</u>, No. 14-11, 2014 WL 4796579 (W.D. Pa. Sept. 26, 2014) (petitioner challenging the BOP's discretionary decisions and the application of its regulations and policies to him was not entitled to excuse from exhaustion requirement because he was neither challenging the legality of BOP regulations nor presenting an issue of statutory construction); <u>Hronek v. Angelini,</u> No. 07-1228, 2008 WL 717822 (M.D. Pa. Mar. 17, 2008); <u>Narang v. Samuels</u>, No. 06-1062, 2006 WL 2627965 (D.N.J. Sept. 12, 2006).

For the foregoing reasons, the circumstances of this case would not warrant excuse from the exhaustion requirement.  While Petitioner has failed to exhaust his administrative remedies prior to seeking relief pursuant to § 2241, justifying denial of his Petition on that basis alone, exhaustion here would be futile.  Even if Petitioner had properly appealed the Commission's decision, his Petition would be denied because his claims lack merit, as discussed below.

D.  Merits

Notwithstanding Petitioner's failure to exhaust, the court may deny a habeas petition on the merits if "it appears unequivocally that the petitioner has not raised a colorable federal claim." Faulkner v. Pa. Dep't of Corr., 221 F.Supp.2d 560, 563 (E.D. Pa. 2002) (citing 28 U.S.C. § 2254(b); Lambert v. Blackwell, 134 F.3d 506, 514–15, 517 (3d Cir. 1997); Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992)). Accordingly, the Court will address the petition on the merits.

1. 2005 Parole Revocation

Respondent contends that the Commission properly ordered forfeiture of all time from the date on which Petitioner was initially released on parole to the date of execution of the Commission's warrant.  For the reasons set forth below, the Court agrees.

The parties devote their submissions to the question of whether or not the time Petitioner spent in custody on a different sentence can be forfeited.  Petitioner contends that only the time when he was physically free from confinement ("street time") can be forfeited, while Respondent — relying on Garafola v. Wilkinson, 721 F.2d 420, 426 (3d Cir. 1983) — asserts that "time spent on parole" can include time spent in custody on a different sentence.  In his Reply, Petitioner argues that Garafola and the other cases cited by Respondent are

no longer good law and he cites to United States v. Johnson, 529
U.S. 53 (2000) in support of his position that he should be
credited for time spent in custody.

As an initial matter, Petitioner is mistaken in believing
that Garafola has been abrogated.  It remains good law in this
Circuit.  Moreover, Johnson presented a unique situation in
which the U.S. Supreme Court found that a prisoner's supervised
release did not commence on the end date of his sentence because
the prisoner remained improperly incarcerated beyond his release
date.  The Court clarified that, under those circumstances,
actual freedom from confinement was necessary to trigger
commencement of supervised release so as not to frustrate
Congress' intent in enacting the supervised release statute — to
assist individuals in their transition to community life.  Thus,
the facts of Johnson are distinguishable from those presented in
the case presently before this Court.

Regardless, an analysis of what constitutes "time spent on
parole" under the re-parole statute is not necessary for
purposes of resolving the issue currently before the Court.  The
language of the statutes is clear and substantial case law
exists to provide guidance.

It seems that the parties focus too much on the
terminology used by the Commission in the Notice of Action
rather than on the plain language of the statutes.  Additionally

— and perhaps most significant — Petitioner fails to appreciate the distinction between sentence credit and re-parole guidelines credit. See 28 C.F.R. §§ 2.21(c), 2.52(c); see also, Bowen, 805 F.2d 885; Berg, 735 F.2d 378; Staege, 671 F.2d 266.  Below, the Court clarifies the difference between these concepts and recites the statutes and procedure involved in computation of these credits.

In this case, Petitioner was convicted in 2004 of a new offense, the Cocaine Offense, while on parole for his D.C. Offenses.  The Commission issued a warrant charging Petitioner with a parole violation and, upon execution of the warrant, a revocation hearing was conducted on May 9, 2005.

As a result of that hearing, the Commission issued a Notice of Action on May 23, 2005. (Decl. of Gervasoni 59, Notice of Action, Ex. 17, ECF No. 7-1).  In the Notice of Action, the Commission ordered re-parole after service of 36 months.  This re-parole determination was within the customary range of 34-44 months established by the re-parole guidelines. Id.

The Commission also noted, however, that, as of May 2, 2005, Petitioner had already been in confinement as a result the violation behavior for a total of 18 months.  Thus, although the re-parole determination made on May 9, 2005 was 36 months of service, Petitioner was credited the 18 months he had already spent in confinement on the new offense; and his presumptive re-

parole date was set for only 18 months later.  Accordingly, on May 2, 2005, the day on which his re-parole was calculated, Petitioner's re-parole date was set for 18 months later, or November 2, 2006. Id.

Therefore, to the extent Petitioner asserts that "he should have been given credit under 28 C.F.R. § 2.21(c) for all time spent in custody for re-parole purposes[,]" his claim is moot. (Pet'r's Reply 5, ECF No. 11).  The record shows that Petitioner was, in fact, properly credited the time he spent in confinement for re-parole purposes pursuant to 28 C.F.R. § 2.21(c).

However, as explained earlier, re-parole credit is significantly different than sentence credit.  It seems that what Petitioner means to assert, but fails to articulate, is that time he spent in custody on his other offenses (the Marijuana Offense, the Cocaine Offense, and for parole violation) should be credited toward completion of his original sentence on the D.C. Offenses.  Petitioner is simply not entitled to this type of credit and the statutes and case law he cites in his Petition do not support his argument.

The Commission considered the effect that Petitioner's parole violation would have on the time remaining on, and the expiration date of, his original sentence for the D.C. Offenses — his violator term.  As set forth above, the clear language of 28 C.F.R. § 2.25(c) mandates that, as a result of his conviction

for a new offense while on parole, Petitioner was not entitled
to any credit toward his original sentence for the time from the
date of his initial parole release — November 5, 1997 — to the
date of the execution of the warrant — December 28, 2004. See 28
C.F.R. § 2.52(c) (". . . if a parolee has been convicted of a
new offense committed subsequent to his release on parole . . .
[the] time from the date of such release to the date of
execution of the warrant is an automatic statutory penalty . . .
[that] shall not be credited to the service of the sentence.");
see also Smith v. U.S. Parole Comm'n, 563 F. App'x 99 (3d Cir.
2014) (finding that, upon revocation of parole in 2003, none of
the time between parolee's 1989 parole and the execution of the
Commission's warrant in 2003 would be credited toward
satisfaction of the original sentence); Joiner v. Henman, 902
F.2d 1251, 1254 (7th Cir. 1990) (finding no support for
petitioner's argument that time spent in state confinement
should be credited against time remaining on his federal
sentence); Heath v. U.S. Parole Comm'n, 788 F.2d 85, 91 (2d Cir.
1986), cert. denied, 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391
(1986); see also Rivera v. U.S., No. 12-1736, 2014 WL 1872122 at
*3 (M.D. Pa. May 8, 2014) ("[A]ll time spent on parole is
required to be forfeited if the Commission revokes parole on the
basis of a new conviction for a crime committed while on parole
and punishable by imprisonment.").

The Commission reached this conclusion in the Notice of Action and stated, "[n]one of the time spent on parole shall be credited." (Decl. of Gervasoni 59, Notice of Action, Ex. 17, ECF No. 7-1).  Although the Commission uses the terminology "time spent on parole" rather than the exact language of § 2.52(c), the intent and meaning of the Notice of Action are clear and the Commission's determination is appropriate.  In light of his new conviction while on parole, Petitioner's argument that he is entitled to credit against his original sentence for the time he spent in custody on separate offenses is baseless and without merit.  Accordingly, the Petition is denied.

Further, the Court notes that Petitioner twice before was charged with parole violations and faced the possibility of parole revocation.  As a result of these alleged violations, violator warrants were executed in July and September of 2003 and Petitioner was held in custody pending a determination by the Commission.  In both instances, however, Petitioner's parole was not revoked and he was released from custody shortly thereafter.  Consequently, in contrast to the time spent in custody serving sentences on other convictions (e.g., the Marijuana Offense, the Cocaine Offense), Petitioner was entitled to credit for time spent in custody as a result of executed parole violator warrants. See, e.g., People v. Seiders, 262 Mich. App. 702, 686 N.W.2d 821 (2004); Lee v. Fulwood, No. 10-

5468, 2011 WL 1655571 at *5 n. 7 (E.D. Pa. April 18, 2011) (affording Petitioner sentence credit for the time spent in custody on violator warrants).

In this case, the Notice of Action properly credits the time Petitioner spent in confinement on the previous violator warrants (from July 9, 203 to July 15, 2003; and from September 16, 2003 to December 11, 2003) toward the expiration date of the original sentence. (Decl. of Gervasoni 59, Notice of Action, Ex. 17, ECF No. 7-1).

### 2. 2012 Parole Revocation

In 2012, Petitioner again violated parole by being convicted of a new offense.[6]  For the same reasons discussed above, the Commission did not err when it again revoked Petitioner's parole, did not credit Petitioner for any time spent on parole, and established a new re-parole date. (Decl. of Gervasoni 122, Notice of Action, Ex. 30, ECF No. 7-1).

In compliance with 28 C.F.R. § 2.21(c), the re-parole date properly credited Petitioner with time spent in custody on the parole violator warrant. _Id._  And, in compliance with 28 C.F.R.

---

[6] Petitioner was also charged with a parole violation in 2009. However, following a probable cause hearing, Petitioner agreed to a proposed disposition whereby his parole was revoked, none of the time spent on parole was credited and he continued a presumptive parole date of July 31, 2009. (Decl. of Gervasoni 90,91 Response to Expedited Revocation Proposal, Ex. 21, ECF No. 7-1).  He does not challenge this agreement in his Petition.

§ 2.52(c), the Notice of Action properly did not credit Petitioner's original sentence for the D.C. Offenses with any time from the date of his release on parole to the date of the execution of the parole violator warrant. Id.

   3. Selective Imposition of Violations by the Commission

      With respect to this claim, Petitioner refers to the federal sentence he served for the Marijuana Offense.  When Petitioner was paroled from his D.C. Offenses in 1997, he was paroled to the federal detainer on this federal sentence.  After completing service of this federal sentence, he was released from federal custody on supervised release in April of 2002.  In his Petition, Petitioner alleges,

> [i]t was not until after petitioner caught another charge that the [Commission] decided to violate petitioner for the marijuana case.  However, the [Commission] already was on notice that petitioner had caught the federal charge but chose to parole petitioner never-the-less, even though it knew that petitioner had sustained a new drug offense while incarcerated.  In other words, the [Commission] was well within its rights prior to petitioner's release on parole to the federal detainer, to extend his sentence by retarding, and or, recinding [sic] his parole for the marijuana charge, but it did not. Therefore, it could not do so at a later time just because petitioner was back into custody on another charge.

(Pet. 8, ECF No. 1).  In light of these statements, it appears to the Court that Petitioner believes that the Commission used the Marijuana Offense as a basis for charging him with violation of parole for his D.C. Offenses.  Petitioner is mistaken.

As set forth in the background section of this Opinion, upon his release from custody on the Marijuana Offense, Petitioner was charged with violation of parole for failure to report to his supervision officer. (Decl. of Gervasoni 9-10, Ex. 5 Report of Alleged Violation, ECF No. 7-1).  He was later charged for violation of parole for use of illegal drugs and for being arrested and charged with the Cocaine Offense. (Decl. of Gervasoni 20-21, Ex. 9 Warrant Application, ECF No. 7-1). Finally, as a result of his conviction in D.C. Superior Court for the Cocaine Offense, the Commission charged Petitioner with the parole violation that ultimately led to the revocation of his parole in 2005, discussed at length above.  Therefore, Petitioner is mistaken in his belief that the Commission charged him with a parole violation for events related to the Marijuana Offense which occurred prior to his initial parole in 1997. Accordingly, his claim is denied in this respect.

4. Expiration of sentence for the D.C. Offenses

To the extent that Petitioner asserts that his sentence for the D.C. Offenses has expired (Pet. 8, ECF No. 1), Petitioner is mistaken.  When Petitioner was originally paroled in 1997, the expiration date of his sentence for the D.C. Offenses was set for October 11, 2011. (Decl. of Gervasoni 4, Ex. 2 Cert. of Parole, ECF No. 7-1).  As set forth above, each time Petitioner's parole was revoked, the Commission properly ordered

that none of the time spent on parole would be credited toward completion of his original sentence.  Therefore, each time his parole was revoked, the expiration date of his original sentence was recalculated.  As of March 25, 2014, the expiration date of Petitioner's full term was December 2, 2022. (Decl. of Gervasoni 127, Ex. 31 Sentence Monitoring Computation Data, ECF No. 7-1). Thus, his sentence for the D.C. Offenses has not expired.

   5. Erroneous Application of D.C. Code § 24-406

   In his Petition, Petitioner alleges that the Commission "erroneously applied D.C. Code § 24-406 to his 1995 federal sentence of five years, and has retained that five years, and added that time he spent in federal custody to his 1991 sentences and thereby extended his sentence albeit unlawfully." (Pet. 8, ECF No. 1).  Petitioner does not explain or elaborate on this allegation and the contours of his argument are unclear. Presumably, he is citing § 24-406 in support of his argument that he should have received credit on his original sentence for time he served in federal custody for the Marijuana Offense.

   However, as discussed above, due to his subsequent conviction, Petitioner was not entitled to credit against his original sentence for time in federal custody.  Pursuant to 28 C.F.R. § 2.25(c), Petitioner forfeited all time from the date of his initial release on parole to the date of execution of the warrant.

Moreover, § 24-406 of the District of Columbia Code does not support Petitioner's position.  Specifically, the Code states:

> (2) If a parolee is convicted of a crime committed during a period of parole, the Commission:
>> (A) Shall order that the parolee not receive credit for that period of parole if the crime is punishable by a term of imprisonment of more than one year

D.C. Code § 24-406(c)(2)(A).

Thus, the § 24-406 indicates that, because Petitioner was convicted of a new crime, he is not entitled to credit for any time spent on parole.

To the extent Petitioner asserts that the Commission added time to his original sentence, this assertion is incorrect.  Had Petitioner not violated his parole, he would not have lost credit for time spent on parole and the end date of his sentence for the D.C. Offenses (his "maximum date") would have remained October 11, 2011. (Decl. of Gervasoni 4, Ex. 2 Cert. of Parole, ECF No. 7-1).  However, due to his subsequent convictions, Petitioner lost credit for time spent on parole and the time since his release on parole does not count toward completion of his sentence for the D.C. Offenses.  Petitioner remains obligated to complete this sentence. See Zerbst v. Kidwell, 304 U.S. 359, 362, 58 S. Ct. 872, 874, 82 L. Ed. 1399 (1938) ("Since service of the original sentence was interrupted by parole

violation, the full term of that sentence has not been
completed. Just as respondent's own misconduct (parole
violation) has prevented completion of the original sentence, so
has it continued the authority of the board over respondent
until that sentence is completed and expires.").  Thus, the
Commission did not add any time to, or improperly extend,
Petitioner's sentence; it simply recalculated Petitioner's
maximum date to reflect the time Petitioner has yet to serve.

   6. <u>Consecutive Sentences</u>

     In December 2011, Petitioner was arrested for the Heroin
Offense.  In addition to other events, this arrest led the
Commission to charge Petitioner with violation of parole for his
D.C. Offenses and a parole violator warrant was executed on
February 1, 2012.  While in custody on the parole violator
warrant, Petitioner was found guilty of the Heroin Offense in
the District of Columbia Superior Court.  He was sentenced to 24
months' imprisonment on June 4, 2012.  Thereafter, as the result
of a hearing conducted on November 29, 2012, Petitioner's parole
was revoked on January 11, 2013.

     In his Addendum submission (ECF No. 2), Petitioner alleges
that by revoking his parole after he had been sentenced for the
Heroin Offense, the Commission is "attempting to interrupt an
already lawfully running sentence and a [sic] executed parole
violator warrant for case number 2011-CF2-023990." (Pet'r's Add.

3, ECF No. 2).  Respondent contends that Petitioner's claim is without merit because Petitioner was not sentenced on the Heroin Offense until after he was in custody serving his parole violator term.

Although Petitioner was arrested on the violator warrant on February 1, 2012, the decision to revoke did not occur until January 11, 2013. (Decl. of Gervasoni 122, Notice of Action, Ex. 30, ECF No. 7-1).  Therefore, Petitioner was sentenced on the Heroin Offense prior to being sentenced on the parole violation and having his parole revoked.  Presumably, Petitioner argues that because he was sentenced on the Heroin Offense before he was sentenced for the parole violation, his sentence on the Heroin Offense began to run first.  Petitioner further asserts that, because his sentence began to run on the Heroin Offense, and because pursuant to § 2.21(c) "[t]ime served on a new state or federal sentence shall be counted as time in custody for re-parole guideline purposes[,]" that the sentence for the Heroin Offense and the sentence for the parole violation must run concurrently.  What Petitioner fails to recognize, however, is that he had not begun serving his sentence for the Heroin Offense.

The record indicates that at all times following his arrest on February 1, 2012, Petitioner was in custody on the parole violator warrant.  Furthermore, Petitioner's parole violator

term was deemed to have commenced on the day the parole warrant was executed and Petitioner did, in fact, receive credit for such time for re-parole purposes. (Decl. of Gervasoni 122, Notice of Action, Ex. 30, ECF No. 7-1).  Therefore, although a sentence was imposed for the Heroin Offense, Petitioner did not commence serving that sentence and he is not entitled to any further credit for re-parole purposes.

Additionally, to the extent Petitioner argues that he is entitled to concurrent sentences or to serve the sentence for the Heroin Offense first, the Court notes that "there is no inherent constitutional right to concurrent sentences, nor is there a constitutional right regarding which sentence should be served first." Wilkinson v. Pennsylvania Bd. of Prob. & Parole, No. 10-1436, 2010 WL 3812352, at *8 (M.D. Pa. Sept. 23, 2010) (quoting Gibson v. Murray, No. 05-874, 2006 WL 2668528, at *3 (W.D. Pa. Sept. 14, 2006)).  The Commission was within its authority to order that the sentences run consecutively. See Garafola, 721 F.2d. at 422 n.2.

Furthermore, as Respondent points out, pursuant to D.C. Code § 23-112,

> [a] sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the

same transaction and requires proof of a fact which
the other does not.

D.C. Code § 23-112; see also FEDERAL BUREAU OF PRISONS, PROGRAM
STATEMENT 5880.32, DISTRICT OF COLUMBIA SENTENCE COMPUTATION MANUAL, 19.2
(2010) ("Simply stated, [D.C. Code § 23-112] requires that a
newly imposed D.C. Code sentence will run consecutively to any
existing sentence, including another D.C. Code sentence, U.S.
Code sentence or non-federal sentence, if the court does not
order otherwise."). There is nothing to suggest that the D.C.
sentencing court expressly provided for anything other than
consecutive sentences. Therefore Petitioner's claim is without
merit.

IV.   Certificate of Appealability

It is not clear to this Court whether a certificate of
appealability is necessary in this Section 2241 case. See,
e.g., Coady, 251 F.3d at 485 (declining to answer the question
of whether a certificate of appealability is required in Section
2241 cases involving state prisoner). As stated above, this
Court construes this Petition as one filed under § 2241. To the
extent that it is properly brought under § 2241, no certificate
of appealability is necessary. See United States v. Cepero, 224
F.3d 256, 264–65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

However, Petitioner, as a District of Columbia prisoner, is
a state prisoner. See Madley, 278 F.3d at 1309; Coady, 251 F.3d

at 486.  Thus, to the extent this Petition is properly brought pursuant to § 2254, a certificate of appealability is required. See Deen-Mitchell, 548 F. App'x 747 (prisoner convicted in a District of Columbia Court required certificate of appealability to appeal the denial of his habeas petition); Wilson, 652 F.3d 348 (same).  Because Petitioner has not made "a substantial showing of the denial of a constitutional right", this Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2).  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

<u>V.   CONCLUSION</u>

For the foregoing reasons, the Petition is denied and no certificate of appealability shall issue.  An appropriate order will follow.

_____s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: May 22, 2015
At Camden, New Jersey